IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| MBI Oil and Gas, LLC,<br><br>                                         Plaintiff,<br><br>vs.<br><br>Royalty Interests Partnership, LP, and<br>Grayson Mill Bakken, LLC,<br><br>                                         Defendants. | Case No. 1:22-cv-00187 |

**ORDER GRANTING ROYALTY INTERESTS PARTNERSHIP'S MOTION FOR SUMMARY JUDGMENT, GRANTING, IN PART, AND DENYING, IN PART, GRAYSON MILL BAKKEN'S MOTION FOR SUMMARY JUDGMENT, AND DENYING MBI OI AND GAS'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

[¶ 1]   THIS MATTER comes before the Court on three Motions for Summary Judgment. Defendants Grayson Mill Bakken, LLC,[1] ("Grayson Mill") and Royalty Interests Partnership, LP ("Royalty") filed their Motions for Summary Judgment on January 17, 2024. Doc. Nos. 37, 39. Plaintiff MBI Oil and Gas, LLC ("MBI") also filed its Motion for Summary Judgment on January 17, 2024. Doc. No. 42. Responses were filed on February 7, 2024. Doc. Nos. 45, 47, 48. Replies were filed on February 21, 2024. Doc. Nos. 49, 50, 51.

---

[1] The Complaint originally named Ovintiv USA Inc. ("Ovintiv") as a Defendant. However, Grayson Mill became Ovintiv's successor in interest and Magistrate Judge Clare R. Hochhalter granted Ovintiv's Motion to Substitute Party on November 28, 2023. Doc. No. 36. Thus, Grayson Mill has replaced Ovintiv as Defendant and the Court has included Grayson Mill in the caption accordingly.

- 1 -

[¶ 2]   For the reasons set forth below, Royalty's Motion for Summary Judgment is **GRANTED**, Grayson Mill's Motion for Summary Judgement is **GRANTED**, **in part**, **and DENIED**, **in part**, and MBI's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

[¶ 3]   The Parties agree the facts necessary to resolve this case are undisputed. This case involves an oil and gas lease ("MBI Lease") concerning land described in the Lease as:

**Township 149 North, Range 98 West of the 5th P.M.**

Section 3:    Lot 1 (40.62ac.), Lot 2 (40.66ac.), Lot 3 (40.70ac.), S/2NE/4, E/2SW/4, SE/4NW/4, E/2SE/4 and W/2SE/4

Section 10:   NW/4/NW, NE/4NE/4

Doc. No. 38-1. Prior to the formation of the MBI Lease, Continental Resources placed a well in the northern portion of these described lands, which began producing in 2011. Doc. No. 44-3. This well is named "Calhoun #1-3H Well" (the "Calhoun Well"). See id.; Doc. No. 38-1, p. 1. Also in 2011, the North Dakota Industrial Commission ("NDIC") entered a pooling order for the oil and gas interests in the remaining portions of Sections 3 and 10 not subject to the MBI Lease. Doc. No. Doc. Nos. 38-3, 40-6, 44-2.

[¶ 4]   On June 10, 2023, Royalty as Lessor and MBI as Lessee entered into the MBI Lease. Doc. No. 38-1. The purpose of the lease was for MBI to have exclusive right for "mining, exploring by geophysical and other methods, and operating for and producing therefrom all oil, gas and associated minerals of whatsoever nature or kind." Id. at p. 2. The MBI Lease had two time periods for its effectiveness. First, there was a three-year primary term beginning June 10, 2013, and expiring June 10, 2016. See id. The MBI Lease would continue into its secondary term for "as long thereafter as oil or gas of whatsoever nature or kind is produced in commercial quantities from said leased premises or on acreage pooled therewith, or drilling operations are continued as

hereinafter provided." Id. The MBI Lease was "paid-up," meaning MBI gave Royalty a cash down payment and MBI was not required "to commence or continue any operations during the primary term." Id. MBI further agreed to deliver royalty payments to Royalty at a rate of twenty-one percent (21%) from the production of oil and gas from the land subject to the MBI Lease. Id. at pp. 2-3. The Lease specifically exempts the Calhoun Well from the Lease's terms:

> **RESERVING TO [ROYALTY] ALL OF [ROYALTY'S] RIGHT, TITLE AND INTEREST IN AND TO THE WELLBORE FOR THE *CONTINENTAL RESOURCES, INC. – [CALHOUN WELL]* THE SURFACE LOCATION BEING LOCATED IN THE NW/4NE/3 OF SECTION 3, T149N, R98W, 5TH P.M., MCKENZIE COUNTY, NORTH DAKOTA, AND ALL ASSOCIATED EQUIPMENT AND PERSONAL PROPERTY (THE "WELLBORE"), TOGETHER WITH SUCH INTEREST OF [ROYALTY] DERIVED FROM THE MINERAL ESTATE, AS ARE NECESSARY TO VEST IN [ROYALTY] OWNERSHIP OF ALL OF [ROYALTY'S] RIGHT, TITLE AND INTEREST IN THE WELLBORE AND THE PRODUCTION THEREFROM. ALONG WITH RIGHTS IN AND TO ALL EXISTING AND EFFECTIVE UNITIZATION, POOLING AND COMMUNITIZATION AGREEMENTS, AND OTHER CONTRACTS, AGREEMENTS AND INSTRUMENTS TO THE EXTENT ONLY THAT THEY RELATE TO OR AFFECT [ROYALTY'S] INTERESTS IN THE WELLBORE. CONCURRENT RIGHTS OF INGRESS AND EGRESS TO THE LANDS, AND IN AND TO SURFACE USE AGREEMENTS, RIGHTS OF WAY, EASEMENTS, SURFACE LEASES AND OTHER SURFACE RIGHTS HELD BY [ROYALTY] IN CONNECTION WITH OWNERSHIP OR OPERATION OF THE MINERAL ESTATE NECESSARY FOR ITS RETENTION OF [ROYALTY'S] INTEREST IN THE WELLBORE.**

Id. at p. 2 (emphasis and capitalization in original).

[¶ 5]   At the close of the lease's primary term on June 10, 2016, MBI (1) did not have an active well on the leased premises during the primary term and (2) the Calhoun Well was the only producing well on the leased premises until 2020. Doc. No. 38-2, pp. 6, 7. The Calhoun Well was producing oil and gas in commercial quantities at the close of the primary term. See id. at p. 6. MBI had no interest in the Calhoun Well and has never paid Royalty any royalties on the Calhoun Well's production Doc. No. 38-4, ¶ 12. On January 1, 2020, Royalty entered into an oil and gas

lease with Ovintiv. ("Ovintiv Lease"). Doc. No. 44-7. The Ovintiv Lease was subsequently recorded on April 27, 2022. Doc. No. 44-8. Under the Ovintiv Lease, Ovintiv drilled multiple wells in 2020. Doc. No. 38-11, ¶ 5.

[¶ 6] On June 17, 2022, Royalty sent a letter to MBI requesting MBI file a release of the MBI Lease in accordance with the terms of the agreement. Doc. Nos. 38-6, 40-16. MBI never filed a release and, instead, MBI filed the Complaint on September 27, 2022, against Royalty and Ovintiv, claiming the Lease is valid and superior to the Ovintiv Lease. Doc. No. 1-4. The case was subsequently removed to this Court on October 31, 2022. Doc. No. 1. Royalty and Ovintiv filed Counterclaims arguing the Lease has expired and the Ovintiv Lease is valid and enforceable.[2] Doc. Nos. 2, 3. The Parties have filed Motions for Summary Judgment seeking final resolution of this dispute. Doc. Nos. 37, 39, 42. This Court has jurisdiction because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

## DISCUSSION

### I.     Summary Judgment Standard

[¶ 7] The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" Dick v. Dickinson State Univ., 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting Anderson, 477

---

[2] Ovintiv/Grayson Mill seeks to quiet title in favor of the Ovintiv Lease. Royalty seeks a declaration the MBI Lease has terminated. In either instance, the inquiry is whether the MBI Lease has terminated.

U.S. at 248). Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 717 (8th Cir. 2016) (quoting Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014)). "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." Nunn v. Noodles & Co., 674 F.3d 910, 914 (8th Cir. 2012) (citing Anderson, 477 U.S. at 249).

[¶ 8]   If the movant demonstrates the absence of a genuine issue of material fact, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id.

## II.  MBI Lease

[¶ 9]   Grayson Mill argues the MBI Lease terminated in 2016 because the Calhoun Well's production did not perpetuate the MBI Lease into its secondary term. In making this argument, Grayson Mill posits (1) the reservation clause excluded the Calhoun Well's production from qualifying under the MBI Lease and (2) the MBI Lease required MBI to cause production in order to perpetuate the lease into its secondary term. Grayson Mill further contends the NDIC pooling order does not negate the reservation clause. In addition to the arguments raised by Grayson Mill, Royalty argues the Calhoun Well and its production were not on acreage pooled with the Leased Premises.

[¶ 10]   MBI argues the lease has not expired and remains in effect, claiming any production of oil and gas on any of the leased premises or acreage pooled therewith perpetuates the lease into the secondary term. In making this argument, MBI contends the Calhoun Well is on the leased premises and produces oil and gas from acreage pooled with the leased premises and the reservation clause does not preclude production from the Calhoun Well from preserving the MBI Lease. Finally, MBI argues the pooling order necessarily requires the Calhoun Well's production to count under the lease.

[¶ 11]   In diversity actions, federal courts apply "the substantive law of the forum state, here North Dakota." Northern Oil and Gas, Inc. v. Moen, 808 F.3d 373, 376 (8th Cir. 2015). Under North Dakota law, oil and gas leases are contracts and are interpreted with the ordinary rules of contract interpretation. Northern Oil & Gas, Inc. v. EOG Resources, Inc., 2022 ND 182, ¶ 17, 981 N.W.2d 314; Johnson v. Statoil Oil & Gas LP, 2018 ND 227, ¶ 7, 918 N.W.2d 58 ("The same general rules that govern interpretation of a contract apply to oil and gas leases."). When contract language is clear and unambiguous, the language of a contract controls. N.D.C.C. § 9-07-02. Contracts are interpreted to give effect to the mutual intention of the parties. N.D.C.C. § 9-07-03. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable." ND.C.C. § 9-07-06. "Each clause is to help interpret the others." Id. The terms of a contract are given their plain and ordinary meaning. Schwarz v. Gierke, 2010 ND 166, ¶ 16, 788 N.W.2d 302. Oil and gas leases "are interpreted to determine the parties' intent." Northern Oil & Gas, 2022 ND 182, ¶ 17.

[¶ 12]   The plain language of the MBI Lease shows the intent of Royalty and MBI was to exclude the Calhoun Well's production from perpetuating the MBI Lease into its secondary term. The reservation clause specifically states Royalty reserves "all" of its "right, title and interest in and to

the wellbore for" the Calhoun Well. Doc. No. 38-1, p. 2. This provision further reserves to Royalty "such interest of [Royalty] derived from the mineral estate, as are necessary to vest in [Royalty] ownership of **all of Royalty's right, title and interest in** the wellbore and **the production therefrom**." Id. (emphasis added). Under this provision, Royalty reserved an unqualified right, title and interest in all of the production from the Calhoun Well. Id. An "interest" is "a legal share in something; all or part of a legal or equitable claim to or right in property." *Interest*, BLACK'S LAW DICTIONARY (11th ed. 2019). Under this provision, MBI has no interest in the production from the Calhoun Well. This necessarily includes MBI's interest in the Calhoun Well continuing the MBI Lease into its secondary term. Only Royalty is given any interest in the production from the Calhoun Well under the MBI Lease. The MBI Lease extends into its secondary term only "as long as thereafter as oil and gas of whatsoever nature or kind is produced in commercial quantities from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided." Id.  The Calhoun Well was the only production on the leased premises and the acreage pooled with it under the NDIC pooling order. The Calhoun Well's production is, therefore, excluded under the contract and does not perpetuate the MBI Lease into its secondary term and the MBI Lease expired on June 10, 2016.[3]

[¶ 13]  Likewise, the pooling order does not negate the contract between the parties. The pooling order was effective approximately two years prior to the MBI Lease. Despite this pooling order, MBI and Royalty contracted to preserve to Royalty all rights to the production from the Calhoun

---

[3] MBI argues the reservation clause does not preclude production from the Calhoun Well as perpetuating the lease into the secondary term because the Ovintiv Lease's reservation clause states, "it is the intent of the parties that this lease shall not be held by any production from the reserved wells." See Doc. No. 44-8, p. 2. Inclusion of this language does not by itself render the reservation clause inapplicable in terms of determining what production perpetuates the MBI Lease into the secondary term.

Well. "[G]overnmental pooling and unitization orders do not divide a lease, and production anywhere on the pooled acreage holds all leases that may be wholly or partly in the unit." Egeland v. Continental Resources, Inc., 2000 ND 19, ¶ 16, 616 N.W.2d 861. Section 38-08-08(1) of the North Dakota Century Code provides "[t]hat portion of the production allocated to each tract included in a spacing unit covered by a pooling order must, when produced, be deemed for all purposes to have been produced from such tract by a well drilled thereon." However, the North Dakota Supreme Court has held this portion of Section 38-08-08(1), "which deals with forced pooling, is applicable only where there are separately owned tracts and not separately owned interest in the same tract." Schank v. North Am. Royalties, Inc., 201 N.W.2d 419, 432 (N.D. 1972). The Calhoun Well, here, falls squarely within the bounds of the described leased premises. It is, therefore, a separately owned interest in the same tract, which renders Section 38-08-08(1), as quoted above, inapplicable. Id.

[¶ 14]   In addition, pooling orders do "not implicate the validity of an underlying lease." Northern Oil and Gas, 808 F.3d at 379. The pooling order, therefore, does not render any portion of the MBI Lease invalid. The lease, here, expressly reserved all interest in the production of oil and gas from the Calhoun Well to Royalty. When they entered the MBI Lease, Royalty and MBI agreed to exclude the production from the Calhoun Well from the terms of the lease. Because only Royalty retains the right, title, and interest in the production of oil and gas from the Calhoun Well, and there was no other production of oil and gas on the leased premises or acreage pooled therewith, the lease terminated on June 10, 2016.[4]

---

[4] This conclusion resonates with the purpose of the lease. The intent of the MBI Lease was to encourage oil and gas production and exploration. Over the course of the primary term, MBI did nothing to further that purpose. Once the time expired, MBI continued to sit on its hands and do nothing to further the intent of the MBI Lease. The Calhoun Well was producing, but those interest

[¶ 15] Accordingly, Royalty's and Grayson Mill's Motion for Summary Judgment as to the termination of the MBI Lease is **GRANTED** and MBI's Motion for Summary Judgment is **DENIED**.

### III. Attorneys' Fees

[¶ 16] Grayson Mill and Royalty argue they are entitled to attorneys' fees and statutory damages from MBI pursuant to N.D.C.C. § 47-16-37. MBI does not respond to this argument.

[¶ 17] Section 47-16-37, N.D.C.C., provides:

> Should the owner of such lease neglect or refuse to execute a release, then the owner of the leased premises may sue in any court of competent jurisdiction to obtain such release, and may also recover in such action of the lessee, the lessee's successors or assigns, the sum of one hundred dollars as damages, and all costs, together with a reasonable attorney's fee for preparing and prosecuting the suit, and may also recover any additional damages that the evidence in the case will warrant. In all such actions, writs of attachment may issue as in other cases.

[¶ 18] On June 17, 2022, Royalty requested MBI execute a release of the MBI Lease. Rather than execute a release, MBI filed the Complaint in this case. Royalty owns the leased premises. Royalty filed a Counterclaim to secure the release of the MBI Lease. Having satisfied these requirements, Royalty is entitled to attorneys' fees and $100 in statutory damages. At this time, however, Royalty has not provided the Court any documentation regarding their accumulated attorneys' fees, but it has noted it will file the proper request within 14 days of the entry of judgment pursuant to Fed. R. Civ. P. 54(d)(2)(B)(i).

[¶ 19] Accordingly, Royalty's Motion for Summary Judgment on its claim for reasonable attorneys' fees and $100 statutory damages is **GRANTED**.

---

were reserved in the MBI Lease to Royalty. If MBI wanted to extend the life of the lease, they should have engaged in the required conduct to prolong the life of the lease.

[¶ 20]  Grayson Mill also claims it has an ownership interest in the leased premises as lessee of the premises under the Ovintiv Lease. In making this argument, it states it has an interest in real property, relying on Nantt v. Puckett Energy Co., 382 N.W.2d 655, 659 (N.D. 1986), which held "[o]il and gas leases are interests in real property in North Dakota." See also Kittleson v. Grynberg Petroleum Co., 2016 ND 44, ¶ 34, 876 N.W.2d 443 ("The interest conveyed to the lessee under an oil and gas lease is known as a working interest. The interest retained by the lessor is known as a royalty interest. The working interest and royalty interest are both interests in real property." (internal citations omitted)); Slawson Expl. Co., Inc. v. Nine Point Energy, LLC, 966 F.3d 775, 780 (8th Cir. 2020) (lessee's working interest is an interest in real property). However, none of these cases state a subsequent lessee is an "owner of the leased premises."

[¶ 21]  It does not appear the North Dakota Supreme Court has decided whether a subsequent lessee under these circumstances is an "owner of the leased premises" under Section 47-16-37 of the North Dakota Century Code. "When there is no state supreme court case directly on point, [the Court's] role is to predict how the state supreme court would rule if faced with the issues before [the Court]." Northland Cas. Co. v. Meeks, 540 F.3d 869, 874-75 (8th Cir. 2008 (quoting Cotton v. Commodore Exp., Inc., 459 F.3d 862, 864 (8th Cir. 2006)).

[¶ 22]  When interpreting North Dakota statutes, the North Dakota Supreme Court looks to the "plain language of the statute and give[s] each word of the statute its ordinary meaning." Continental Resources, Inc. v. Counce Energy BC #1, LLC, 2018 ND 10, ¶ 8, 905 N.W.2d 768 (quoting Denault v. State, 2017 ND 167, ¶ 10, 898 N.W.2d 452). The North Dakota Supreme Court has stated Section 47-16-37 of the North Dakota Century Code gives lessors equal bargaining power to the lessees under these circumstances. Nygaard v. Robinson, 341 N.W.2d 349, 359 (N.D. 1983). The plain language of Section 47-16-37 is clear. Section 47-16-37 awards attorneys' fees

to the "**owner** of the leased premises." (emphasis added). This statute does not give an award of attorneys' fees to the subsequent lessee of the leased premises. Grayson Mill is not the owner of the leased premises—Royalty is. Grayson Mill is a subsequent lessee of the premises. Accordingly, Grayson Mill is not entitled to its reasonable attorneys' fees and $100 in statutory damages.

[¶ 23] Accordingly, Grayson Mill's Motion for Summary Judgment on its claim for reasonable attorneys' fees and $100 statutory damages is **DENIED**.

## CONCLUSION

[¶ 24] For the foregoing reasons, Royalty's Motion for Summary Judgment is **GRANTED**, Grayson Mill's Motion for Summary Judgment is **GRANTED, in part, and DENIED, in part**, and MBI's Motion for Summary Judgment is **DENIED**. It is, therefore, **ORDERED**:

1. The MBI Lease terminated following the expiration of its primary term on June 10, 2016.

2. MBI's Complaint is **DISMISSED with prejudice**.

3. Royalty is awarded $100 in statutory damages pursuant to N.D.C.C. § 47-16-37.

4. Royalty is awarded reasonable attorneys' fees pursuant to N.D.C.C. § 47-16-37, to be calculated at a later date upon filing of a request for attorneys' fees under Fed. R. Civ. P. 54.

[¶ 25] **IT IS SO ORDERED**.

[¶ 26] **LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED April 18, 2024.

Daniel M. Traynor, District Judge
United States District Court